UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CARL C. CHESHIRE | CIVIL ACTION NO. 3:15-0933 |
| VERSUS | JUDGE ROBERT G. JAMES |
| AIR METHODS CORP. | MAG. JUDGE KAREN L. HAYES |

<u>RULING</u>

Plaintiff Carl Cheshire ("Cheshire") has brought suit against Defendant Air Methods Corp. ("AMC") for alleged violations of the Louisiana Whistleblower Statute ("LWS"), LA. REV. STAT. § 23:967, *et seq*. On May 25, 2016, this Court issued a Ruling and Judgment [Doc. Nos. 186 & 187] dismissing Cheshire's claim against AMC. On June 8, 2016, AMC filed the instant Motion for Attorneys' Fees and Sanctions ("Motion for Attorneys' Fees") [Doc. No. 189]. For the following reasons, AMC's Motion for Attorneys' Fees is GRANTED IN PART and DENIED IN PART.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Cheshire was employed as a contract helicopter pilot for AMC from April 2012 until February 21, 2014. [Doc. No. 1, p. 1]. Cheshire alleged that he was constructively terminated in violation of a collective bargaining agreement when he was forced to resign in lieu of termination. [Doc. No. 14, p.1]. He contended that his constructive termination was in retaliation for reporting that AMC was engaging in various safety violations. *Id.* at 2. On February 20, 2015, Cheshire filed suit against AMC in state court. [Doc. No. 1]. On March 27, 2015, the action was removed to this Court. *Id.*

On December 9, 2015, Ashley L. Page, counsel for Cheshire, filed a motion for contempt

against Keith Carter, an employee of non-party Pafford Medical Services, Inc. ("Pafford"). [Doc. No. 85]. Magistrate Judge Karen L. Hayes denied the motion as frivolous because it lacked any legal basis. [Doc. No. 108, p. 2]. Magistrate Judge Hayes declined to impose sanctions on Page, but did admonish her conduct: "the Court hereby *sua sponte* admonishes Plaintiff's counsel, Ashley L. Page, and cautions her that the filing of any additional legally frivolous or otherwise unsupportable motions, or affidavits containing scandalous, irrelevant or inadmissible material, will result in the imposition of sanctions." *Id.*

On May 25, 2016, this Court ruled on cross motions for summary judgment. The Court granted Defendant's Motion for Summary Judgment, dismissing Plaintiff's claims with prejudice. [Doc. Nos. 186 & 187]. The Court denied Cheshire's Motion for Summary Judgment and granted AMC's motion to strike Cheshire's affidavit. *Id.*

On June 8, 2016, AMC filed the instant Motion for Attorneys' Fees and Sanctions pursuant to FED. R. CIV. P. 54(d) and LA. REV. STAT. § 23:967 and further sought an award of attorneys' fees as a sanction against Page, pursuant to 28 U.S.C. § 1927. [Doc. No. 189]. Cheshire filed a memorandum in opposition to the Motion for Attorneys' Fees and Sanctions on July 9, 2016. [Doc. No. 198]. On July 26, 2016, AMC filed a reply memorandum. [Doc. No. 201].

**II.    LAW AND ANALYSIS**

AMC argues that it is entitled to the award of attorneys' fees against Cheshire pursuant to LA. REV. STAT. 23:967 and against Page pursuant to 28 U.S.C. § 1927. [Doc. No. 189, p. 1].

**A.    Award Against Cheshire**

AMC first requests reasonable attorneys' fees and costs against Cheshire pursuant to LA. REV. STAT. 23:967D. Under LA. REV. STAT. 23:967D, an employer "may be entitled to reasonable

2

attorney fees and court costs" if a suit is brought "in bad faith"**or** if the court determines that "the employer's act or practice was not in violation" of state law. LA. REV. STAT. 23:967D; *see also Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1215 n. 8. Louisiana appellate courts addressing the issue have found that these are independent bases for the award of fees. *Hale*, 886 So. 2d at 1215; *Accardo v. La. Health Servs. & Indem, Co.*, No. 2005 CW 2377 (La. App. 1st Cir. 06/21/06), 943 So.2d 381, 385–386.

Initially, this Court notes the discretionary nature of the statute, which states that an employer may be entitled to attorneys' fees and costs. La. R.S. 23:967D. The use of "may" rather than "shall" indicates a clear recognition by the legislature that attorneys' fees and costs may not be appropriate in all cases which fail to meet the "unwieldy" burden of the LWS. *Hale*, 886 So.2d at 1215.

In this case, the Court finds that an award of attorneys' fees against Cheshire is not appropriate. First, the Court is not convinced that there is sufficient evidence Cheshire brought these claims in bad faith. Thus, the first prong of § 23:967D is not applicable. Next, the second prong is not applicable because the Court made no finding on the alleged violations of state law. Instead, the Court dismissed Cheshire's claims on alternative bases. Because of the discretionary nature of § 23:967D, along with the specific facts of this case as outlined above, the Court declines to award AMC attorneys' fees against Cheshire under the LWS. To this extent, AMC's motion for attorneys' fees is DENIED.

### B.     Award Against Page

AMC contends that the actions of Cheshire's counsel Page unreasonably multiplied the proceedings in this case and that the Court should order her to pay attorneys' fees personally as a sanction under 28 U.S.C. § 1927 or this Court's inherent power. [Doc. No. 190-3]. AMC argues that

Page should be sanctioned for her conduct on three distinct occasions during the proceedings. *Id.* First, AMC contends that Page should be held responsible for AMC's attorneys' fees in defending the frivolous motion for contempt against non-party Keith Carter. *Id.* at 16. Next, AMC alleges that Page should be held responsible for AMC's attorneys' fees in opposing Cheshire's motion for summary judgment which was filed for advancing an improper purpose. *Id.* at 18. Finally, AMC argues that Page should be held responsible for AMC's attorneys' fees in defending against her improper settlement tactics and breach of protective orders. *Id.* at 22.

### 1. Standard of Review

Under 28 U.S.C. § 1927, an attorney who "so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Fifth Circuit has held that the district court must find that an attorney multiplied the proceedings both "unreasonably" and "vexatiously" under § 1927 to shift reasonable fees. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994).

An attorney's actions are unreasonable, for purposes of § 1927, when he has failed to comply with an objective standard of reasonableness under the circumstances. *Trinity Gas Corp. v. City Bank & Trust Co. of Natchitoches*, 54 F. App'x 591 (5th Cir. 2002). An attorney's action is vexatious when it is undertaken primarily for the purpose of harassment or in order to annoy or embarrass. *United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 875 (5th Cir. 2008). Vexation implies something broader than bad faith or intent to harass. To "vex" is defined among other things as "to bring trouble or distress to," "to subject to mental suffering," or "to irritate or annoy," as well as "to tease or torment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH

LANGUAGE 2548 (1981) *cited in Ratliff v. Stewart*, 508 F.3d 225, 235 n. 13 (5th Cir. 2007).

Section 1927 sanctions are not to be awarded lightly. *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 479 (5th Cir. 2012). "To prevent the courts from dampening 'the legitimate zeal of an attorney in representing her client,' *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991), [the Fifth Circuit] has interpreted § 1927 as penal and construes it in favor of the sanctioned party, *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994)." *Id.* at 526. Awarding sanctions under section 1927 thus "requires that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards*, 153 F.3d at 246 (citations omitted).

When sanctions are not expressly authorized by § 1927 or the Federal Rules of Civil Procedure, a district court may invoke its inherent power to award attorneys' fees and costs against parties or attorneys who "act in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46. Sanction awards for such conduct

> serv[e] the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

*Id.* at 46; *see also Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 181 (D.C. Cir. 1980) ("[A]dvocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto.").

While courts must exercise restraint and discretion in wielding their inherent sanction powers, in light of their potency and unconstrained nature, *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980), they should not hesitate to use them when "neither the statute[s] nor the Rules are up to the task," *Chambers*, 501 U.S. at 50; *see also Peer v. Lewis*, 606 F.3d 1306, 1314–15 (11th Cir. 2010) ("When rules alone do not provide courts with sufficient authority to protect their integrity and

prevent abuses of the judicial process, the inherent power fills the gap.").

"The standards for bad faith are necessarily stringent," and the court must exercise its inherent power to levy fees for bad faith with restraint. *Batson v. Neal Spelce Associates, Inc.*, 805 F.2d 546, 550 (5th Cir. 1986). "A party should not be penalized for maintaining an aggressive litigation posture," but "advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." *Id.* (citation and internal quotation marks omitted). Courts support imposing sanctions where an attorney made repeated filings despite warnings from the court, or other proof of excessive litigiousness. *Procter & Gamble Co.*, 280 F.3d at 525–26 (citing *Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988)). However, sanctions will not be imposed for mere negligence of counsel. *See Hahn v. City of Kenner*, 1 F.Supp.2d 614, 617–18 (E.D. La. 1998).

### 2. Cheshire's Motion for Contempt

AMC first argues that Cheshire's Motion for Contempt against Keith Carter ("Carter") unreasonably and vexatiously multiplied the proceedings and that Page should be held personally responsible for AMC's attorneys' fees in connection with opposing the motion.

On December 9, 2015, Page filed a Motion for Contempt against Carter, an employee of non-party Pafford Medical Services, Inc. ("Pafford"). [Doc. No. 85]. Page sought sanctions against Carter because he allegedly lied while under oath in his deposition. *Id.* at 1. Magistrate Judge Karen L. Hayes denied the motion as frivolous because it lacked any legal basis. [Doc. No. 108, p. 2]. Magistrate Judge Hayes also found that the affidavits Page filed in support of the motion contained "irrelevant, unsupported, and scandalous material which appears to have been filed solely for the

purpose of embarrassing and humiliating the non-party witness who is the subject of the frivolous motion." *Id.* at 3. Magistrate Judge Hayes declined to impose sanctions on Page, but did admonish her conduct: "the Court hereby *sua sponte* admonishes Plaintiff's counsel, Ashley L. Page, and cautions her that the filing of any additional legally frivolous or otherwise unsupportable motions, or affidavits containing scandalous, irrelevant or inadmissible material, will result in the imposition of sanctions." *Id.*

The Court agrees with AMC that Page's conduct in connection with filing the frivolous Motion for Contempt against Carter was vexatious and unreasonable. However, AMC already had an opportunity to object to Magistrate Judge Hayes' order declining to impose sanctions on this basis and failed to do so. FED. R. CIV. P. 72(a) ("A party may serve and file objections to [Magistrate Judge's] order within 14 days . . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). AMC failed to file a timely objection, and the Court declines to impose sanctions on Page on this basis.

### 3. Cheshire's Motion for Summary Judgment

Next, AMC requests that the Court sanction Page for filing Cheshire's Motion for Summary Judgment. [Doc. No. 130]. AMC contends the motion was filed solely for an improper purpose, "namely to embarrass and harass Defendant with the hopes of improving the settlement value of this case." [Doc. No. 194, p. 18].

The Court must make detailed factual findings that the actions of counsel in multiplying the proceedings were both unreasonable and vexatious, the latter of which requires a showing of improper purpose. *Calhoun*, 34 F.3d 1291 at 1297, 1300–1301; *Conner*, 20 F.3d 1376 at 1384. However, "when an attorney's conduct is so obviously unreasonable that a court can infer an

'improper purpose' from the fact that the attorney persisted in it, it is unnecessary for the court to explain at length why the vexatiousness prong has been met." *Ratliff*, 508 F.3d at 234. As the *Ratliff* court explained:

> 'Improper purpose' does not necessarily refer to bad faith or intent to harass. Vexation implies something broader than that. To 'vex' is defined, among others things, as 'to bring trouble or distress to,' 'to subject to mental suffering,' or 'to irritate or annoy,' as well as 'to tease or torment.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2548 (1981). Consistent with this, in *Calhoun* we did not hold that the only way to establish an 'improper purpose' is by showing bad faith. Indeed, any 'reckless disregard of the duty owed to the court' can suffice. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

*Id.* at 235 n. 13.

First, in email correspondence between Page and AMC's counsel, Page repeatedly threatened AMC with the filing of a motion for summary judgment, and disclosure of confidential materials in support of the motion, in order to pressure AMC into settlement.[1] Page notes that "my client's case

---

[1] Page sent AMC's counsel the following emails concerning Cheshire's Motion for Summary Judgment and a possible settlement between the parties:

> 8/18/2015 . . . The case should be evaluated, not as merely my client's lost wages, but in terms of the costs your client will incur by way of competitors taking customers, stock prices being affected, and other immeasurable ways. The less information that finds its way into the public domain, the better your client fares. Our offer stands at $12,000,000.00. [Doc. No. 153-1, p. 2].

> 11/9/2015 While my client's case will be worth $3M per our expert, there is fallout your [sic] client needs to prevent. They are running an illegal operation and, unless Carl is taken care of, the records will go public slowly. . . . *Id.* at 3.

> 12/8/2015 Our demand remains at $12M. At the close of business, the offer is withdrawn and everything goes public. *Id.* at 6.

> 2/23/2016 We expect a settlement offer and soon or I will be filing an MSJ with the Downey Report into Pacer. *Id.* at 7.

will be worth $3M per our expert" [Doc. No. 153-1, p. 3]. However, Page instead used the Motion for Summary Judgment and the accompanying information to increase her leverage for settlement purposes, "[o]ur MSJ will make public information that is worth far more than $12M to your client. We are meeting with a reporter today." *Id.* at 21. As Magistrate Judge Hayes previously noted, much of the information that Cheshire values as "worth far more than $12M" was under a July 27, 2015 protective order. [Doc. No. 48] ("The Court notes that much of the material in these documents is subject to the protective order that has been in place since July 27, 2015 . . . [and] that they should have been filed under seal initially. . . .").[2] Such conduct is a violation of the rules of professionalism to which Page is bound. *See* [Doc. No. 162]; LA. R. PROF. CONDUCT 3.1 ("Comment 1 to the Rule

---

    3/2/2016 Before this goes into Pacer, would you be amenable to mediation? . . . Our MSJ is ready to be filed but it contains information that once in Pacer, will never go away. Please advise. . . . *Id.* at 26.

    3/4/2016 An opening offer [of $30M] is just that... I had to relay it per my client. The bottom line is not that..Our previous was $12M. Much more in line with the value. . . . I am holding the media at bay until after mediation. They are scalping Pacer daily. *Id.* at 23.

    3/8/2016 I would ask you encourage your client to reconsider. Our MSJ will make public information that is worth far more than $12M to your client. We are meeting with a reporter today. *Id.* at 32.

    3/8/2016 The business world is not the same as the legal world. You may be correct in your $1M valuation at trial. Maybe. But this is the known opportunity cost to your client: . . .The real value of this case is $15,000,000. *Id.* at 30-31.

    3/10/2016 It's my birthday weekend so my work week ends at noon tomorrow. It will be filled before noon. The attachments will be depo transcripts, affidavits and Downey's reports with the supporting affidavits. Please advise. *Id.* at 27-28.

[2] The Court notes that AMC inadvertently disclosed this same information after the protective order was issued. *See* [Doc. No. 146, p. 1].

notes that an advocate has "a duty not to abuse legal procedure.").[3]

This evidence makes clear that Page filed the Motion for Summary Judgment and accompanying documents for an improper purpose. *See Ratliff*, 508 F.3d at 234-35. Page's emails illustrate that her true motive for filing the Motion for Summary Judgment was to make certain information public that would be harmful to AMC. Page used the threat of and the actual filing of the Motion for Summary Judgment as a vehicle to harass and extort a larger settlement from AMC.

Second, Page included irrelevant information to support the Motion for Summary Judgment solely to embarrass and cause harm to AMC. For instance, Cheshire's Motion for Summary Judgment includes Cheshire's affidavit. The Court granted AMC's unopposed Motion to Strike Cheshire's affidavit because it was "rife with legal conclusions and conclusory factual assertions with no indication of personal knowledge . . ." [Doc. No. 168, p. 6-7]. Although Page explains that she "did not oppose the Motion to Strike Plaintiff's Affidavit because the Motion for Summary Judgment did not depend on the affidavit," [Doc. No. 198-1, p. 3], her statement actually supports AMC's argument. If the affidavit was unnecessary to the Motion for Summary Judgment, the Court is left to infer that it must have been filed for another, improper purpose.

Finally, deficiencies in Plaintiff's Motion for Summary Judgment display a lack of genuine effort and support the conclusion that the motion was filed for an improper purpose. AMC points out those deficiencies: (1) failed to identify a claim as required by FED. R. CIV. P. 56(a); (2) failed to file a separate statement of facts as required by Local Rule 56.1; (3) several instances where Cheshire failed to cite any record evidence; (4) cited entire documents instead of particular parts of

---

[3] Some courts have found intentional misconduct involving serious breaches of canons of ethics warranted assessment of costs against counsel. *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (7th Cir. 1968), *certiorari denied* 395 U.S. 908, *rehearing denied* 395 U.S. 987.

the record as required by Rule 56(c) and; (5) contained arguments that were awkward and unorganized. As this Court stated in its Ruling on the Motion for Summary Judgment, "Cheshire's briefing is difficult to follow, . . ." and "[o]n multiple occasions, Cheshire fails to support his assertions with any citation to the record. More often he cites entire depositions and expert reports." [Doc. No. 186, p. 1, n.1].

Page attempts to re-direct the Court by arguing that she introduced entire deposition transcripts because AMC would have asserted "incomplete disclosure" if she had merely "filed the pages cited in the Motion for Summary Judgment." [Doc. No. 198-1, p. 3]. However, Page confuses the issue. AMC does not argue, and the Court does not take issue with, Page's filing the entire transcript of a deposition into the record. Rather, Page failed to **cite** to "particular parts of materials in the record," as required by FED R. CIV. P. 56(c). Without the benefit of pinpoint citations, Page expected the Court to wade through 870 pages of exhibits attached to the Motion for Summary Judgment in order to locate which portion of each exhibit supported Cheshire's assertions.

Page also correctly notes that a lack of merit in the Motion for Summary Judgment alone is insufficient to levy a personal sanction. [Doc. No. 198-1, p. 3]. However, when Page's lack of genuine effort on the Motion for Summary Judgment is coupled with her improper purpose in filing the motion, an imposition of sanctions in the form of attorneys' fees to AMC is warranted for the cost incurred in defending the motion.

The Court finds that Page's actions were unreasonable and vexatious, as she acted with an improper motive and with a reckless disregard of the duty owed to the Court. Under these circumstances, personal sanctions under § 1927 are appropriate for her conduct that when "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."

*See Braley v. Campbell*, 832 F.2d 1504, 1512 (en banc) (10th Cir. 1987).

Further, the Court is well within its discretion to invoke its inherent powers to sanction Page for filing the Motion for Summary Judgment for an improper purpose. It is apparent that this motion and the accompanying exhibits were filed to extort a quick and exorbitant settlement from AMC. Sanctions are appropriate to remind Page that the federal court system is not to be used for such purposes and to deter her from engaging in similar conduct in the future. Sanctions in the form of an attorneys' fee award will also defray the costs incurred by AMC in defending the Motion for Summary Judgment.

While not central to the analysis, the Court also notes that the unprofessional conduct Page displayed throughout this litigation, further supports this award of attorneys' fees. For example, Page responded to AMC's filing of the Motion for Attorneys' Fees and Sanctions: "I cannot open attachments at this time but I can see from the name of the attachments that this reply is warranted: GO F*** YOURSELVES." [Doc. No. 201-1, p. 1].

### 4. Page's Improper Settlement Tactics and Breaches of Protective Orders

Finally, AMC argues that it is entitled to reasonable attorneys' fees incurred defending against Page's improper settlement tactics and breach of the protective order. Essentially, AMC seeks attorneys' fees for Page's actions that twice prevented AMC from taking her client's deposition concerning potential violations of the protective order.

#### a. Cheshire's May 19, 2016 Deposition

Page initially notified AMC's counsel that her client would be speaking with ABC News on May 4, 2016. [Doc. 153-2, p. 1]. Page stated that "the new [sic] story will cover maintenance and safety issues. We are going to go on record May 4. No court order will stop it. The only thing that

will stop it is a settlement. $12M." *Id.* AMC then moved for the Court to seal all of the expert reports and maintenance records filed in the record, as well as issue a protective order over the expert reports to ensure compliance with the existing July 27, 2015 Protective Order. [Docs. No. 146 & 149]. On April 28, 2016, the Court granted AMC's Motion to Seal and on May 3, 2016, granted AMC's Motion for a Protective Order. [Docs. No. 154 & 162].

On May 4, 2016, after AMC expressed concerns that the May 3, 2016 Protective Order would be violated during Cheshire's interview, a status conference was held with Magistrate Judge Hayes. [Doc. No. 165]. Magistrate Judge Hayes cautioned Cheshire and Page on the consequences of violating the May 3, 2016 Protective Order. *Id.*

On May 12, 2016, the Court granted AMC's Motion for Leave to Conduct Discovery for Limited Purpose of Determining Breach of Protective Orders. [Doc. No. 171]. The parties agreed to take Cheshire's deposition on May 19, 2016. Instead, on that day, Cheshire filed a Motion to Quash Plaintiff's Deposition because Cheshire had "an aversion to photography" and Page was not provided with exhibits prior to the deposition. Magistrate Judge Hayes denied the Motion to Quash and ordered Cheshire to attend a deposition on either May 20, or May 27, 2016.

AMC seeks attorneys' fees in connection with Page's actions in preventing the May 19, 2016 deposition and the costs associated with opposing the Motion to Quash. However, AMC already moved for attorneys' fees on this basis, and Magistrate Judge Hayes declined to award any attorneys' fees. [Docs. No. 183 & 185]. While the Court does not agree with Cheshire's assertion that this issue is precluded by *res judicata*, the Court does find that AMC already had an opportunity to seek this award for failure to attend the first deposition. Magistrate Judge Hayes declined to award sanctions and the Court will defer to her prior order. *See* FED. R. CIV. P. 72.

Additionally, AMC's request for sanctions associated with the scheduled May 19, 2016 deposition is untimely. Rule 30(d) provides that "[t]he court may impose an appropriate sanction . . . on person who impedes, delays, or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2). Some courts have held that a motion for sanctions must be filed without "unreasonable delay," or before the entry of judgment. *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998); *see Mercy v. County of Suffolk*, 748 F.2d 52, 55–56 (2nd Cir. 1984); *see Brandt v. Vulcan, Inc.,* 30 F.3d 752, 756 (7th Cir. 1994) (holding that unreasonable delay may render a motion for discovery abuse untimely); *see e.g., Citgo Petroleum Corp. v. Odfjell Seachem*, 2013 WL 2289951, at *11 (S.D. Tex. May 23, 2013).

To the extent AMC seeks attorneys' fees for the costs associated with the improper prevention of the May 19, 2016 deposition, that request is denied.

        b.        Cheshire's May 27, 2016 Deposition

AMC also seeks attorneys' fees for Cheshire's failure to attend the deposition scheduled on May 27, 2016. The parties agreed to reset the deposition for May 27, 2016, but on May 25, 2016, this Court issued a Ruling granting AMC's Motion for Summary Judgment and dismissing Cheshire's claims with prejudice. [Doc. No. 186]. After AMC notified Page that AMC intended to proceed with the deposition, Page stated that neither she nor Cheshire would attend the deposition. AMC argues that Page's conduct in refusing to have her client attend the deposition should also warrant an attorneys' fee award to AMC pursuant to § 1927.

The Court denies AMC's request for imposition of attorneys' fees against Page on this basis. Page's conduct in refusing to produce her client for the May 27, 2016 deposition after his claims were dismissed with prejudice cannot be characterized as "unreasonable" and "vexatious" as

14

required under § 1927 when the case had been dismissed. Her conduct in this instance does not constitute the type of egregious attorney misconduct that § 1927 seeks to deter.

### C. Amount of Sanctions

Having again found that sanctions are appropriate, in part, the Court turns to the determination of the appropriate amount of sanctions. The Court will award only attorneys' fees "reasonably incurred" because of Page's sanctionable conduct. *See* 28 U.S.C. § 1927. Based on the Court's findings, AMC's recovery of attorneys' fees is limited to those expenses reasonably incurred in connection with Cheshire's Motion for Summary Judgment.

In this case, counsel for AMC, Christine S. Keenan ("Keenan"), provided an affidavit in which she avers that her billing rate is $260 per hour. Additionally, the other attorney that worked on matters connected to the Cheshire's Motion for Summary Judgment, Jeremy J. Landry ("Landry"), has a billing rate of $210 per hour. Keenan further avers that she has been in practice since 1994, that Landry has been in litigation practice for two years with eight years prior experience as in-house counsel, and that these billing rates are well within the market rate for employment litigation in the Baton Rouge area.

Page inexplicably argues that "[i]t is also questionable that the months and months of time proffered to prepare and file the Defendant's Motion for Summary Judgment is accurate." [Doc. No. 198-1, p. 6]. However, AMC has not submitted a request for attorneys' fees as a sanction in connection with the filing of its own Motion for Summary Judgment. Rather AMC has requested sanctions in connection with defending against Cheshire's Motion for Summary Judgment.

Nevertheless, the Court has a duty to make its own determination of the reasonableness of the attorneys' fees sought. First, the Court will determine the appropriate prevailing market rate

based on prevailing market rates in the relevant community—Monroe, Louisiana—for similar services by attorneys of reasonably comparable skills, experience, and reputation. *See Johnson v. City of Monroe*, 06-0635, 2007 WL 4680476 at *2 (W.D. La. Nov. 27, 2007); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (The relevant legal market is the community where the district court sits). Based on Keenan's averments and the Court's own knowledge of prevailing market rates in the Monroe area, the Court finds that Keenan's requested billing rate is reasonable and similar to that charged by a practitioner of similar experience. *See Luv N' Care, Ltd v. Groupo Rimar*, 2015 WL 9463189, at *10 (W.D. La. Dec. 28, 2015). However, the Court will reduce the rate charged by Landry, an associate that expended a substantial amount of time defending Cheshire's Motion for Summary Judgment. Landry's rate will be reduced to $150 to reflect similar rates charged by a practitioner of similar experience in the Monroe, Louisiana area. *See id*.

      The Court now turns to a review of Keenan's and Landry's hourly time records, which are supported by Keenan's affidavit. The records reflect that Keenan expended 7.3 hours in connection with Cheshire's Motion for Summary Judgment. Further, the billing records reflect that Landry expended over 68 hours in connection with Cheshire's Motion for Summary Judgment. The Court finds that the hours expended by Keenan are not excessive, and the time records do not reflect duplicative entries. However, the Court finds that the hours expended by Landry, in opposing a five-page Motion for Summary Judgment and filing the related Motion to Strike, are excessive.[4] The Court will reduce the hours expended by Landry by 25% to 51 hours in order to reflect a more reasonable amount of time in defending Cheshire's motion. Keenan expended 7.3 hours multiplied

---

[4] The Court does note that Plaintiff's Motion for Summary Judgment was supported by 410 pages of exhibits.

by $260 per hour yielding a fee of $1,898.00. Landry expended 51 hours multiplied by $150 per hour yielding a fee of $7,650.00. Calculating the hours expended with the prevailing market rates of both attorneys results in a total of $9,548.00. The Court finds that $9,548.00 adequately represents the reasonable attorneys' fees incurred by AMC because of Page's conduct.

### III.  CONCLUSION

For these reasons, AMC's Motion for Attorneys' Fees and Sanctions [Doc. No. 189] is GRANTED IN PART and DENIED IN PART. To the extent AMC seeks an award of attorneys' fees against Cheshire, the motion is DENIED. To the extent the motion seeks an award of attorneys' fees against Cheshire's counsel, Page, the motion is GRANTED IN PART and DENIED IN PART. AMC is awarded $9,548.00 in attorneys' fees against Page personally as a sanction under 28 U.S.C. § 1927 and the inherent power of the Court.

MONROE, LOUISIANA, this 1st day of November, 2016.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE